UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KENNETH A. W., JR., | ) |
| | ) |
|        Plaintiff | ) |
| | ) |
| v. | )   No. 1:20-cv-00419-GZS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
|        Defendant | ) |

### REPORT AND RECOMMENDED DECISION[2]

This Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the ALJ made a residual functional capacity (RFC) determination unsupported by substantial evidence. *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 23). I agree, and, accordingly, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Hum. Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of ischemic heart disease, headaches,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

personality disorder, anxiety disorder, and affective disorder, Finding 2, Record at 14; that he had the RFC to perform light work as defined in 20 C.F.R. 416.967(b), except that he required the option to alternate between sitting and standing, or vice versa, at 30-minute intervals, allowing him to remain in the new position for up to two minutes before returning to the previous position, could stand and/or walk for a total of four hours in an eight-hour day, could never crawl or climb ladders, could climb ramps and stairs, balance, stoop, kneel, and crouch frequently, could not tolerate any exposure to extreme heat or cold, was limited to performing simple, routine tasks that are not done at a production-rate pace, such as assembly line work, could not interact with the public as part of required job duties, could tolerate no more than occasional interaction with co-workers and supervisors on an ongoing basis, not precluding brief periods of more intensive interaction to include frequent interaction during an initial training period of up to 30 days, and was limited to making only simple work-related decisions, Finding [4], *id*. at 17; that, considering his age (38 years old, defined as a younger individual, on the date his application was filed, June 29, 2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 5-8, *id*. at 26-27; and that he, therefore, had not been disabled from the date of his application, June 29, 2015, through the date of the decision, March 31, 2020, Finding 9, *id*. at 29-30. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Hum. Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported

by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than any past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Hum. Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Background

The plaintiff filed an application for benefits in June 2015, alleging, in relevant part, that he suffered from cluster migraines and swelling of the brain. *See* Record at 105. He claimed that he had been hit in the head with a hammer as a child and suffered from daily headaches. *See id.* at 109. J.H. Hall, M.D., reviewed the plaintiff's disability claim at the initial level in December 2015, and Jose Gonzalez-Mendez, M.D., reviewed it on reconsideration in July 2016. *See id.* at 105-19, 122-40. Both determined that the plaintiff's only severe physical impairment was ischemic heart disease. *See id.* at 111, 130-31. With regard to the plaintiff's headaches, Dr. Hall noted, "There is no confirmation of head trauma, migraines or swelling in brain. Whatever happened to him as a child apparently did not interfere with work until Sept[ember] 2014." *Id.* at 112. Dr. Gonzalez-Mendez agreed on reconsideration, and neither he nor Dr. Hall found the plaintiff's headaches to be a medically determinable impairment. *See id.* at 111, 130-33.

Thereafter, the plaintiff filed a request for a hearing before an ALJ. *See id.* at 184-86. While that request was pending, one of the plaintiff's treating providers, Tenielle Holste, P.A.,

filled out a medical source statement regarding the plaintiff's headaches. *See id.* at 997-99. She described the plaintiff as suffering from moderate to severe "chronic daily headaches[,]" most of which lasted all day, that resulted in mood changes, impaired sleep, an inability to concentrate, malaise, exhaustion, and throbbing pain. *Id.* at 997. Among other things, PA Holste checked a box indicating that the plaintiff would "generally be precluded from performing even basic work activities" and would "need a break from the workplace" during his headaches; she also noted that she was "not sure he would be able to work with [his] chronic daily headaches[.]" *Id.* at 999.

After conducting a hearing, the ALJ issued a decision in September 2017 finding the plaintiff not disabled and concluding, among other things, that the plaintiff's headaches were a nonsevere impairment. *See id.* at 147-48, 157-58. In June 2019, however, the Appeals Council vacated that decision, noting, among other issues, that it did not reflect whether the ALJ had considered PA Holste's opinion about the plaintiff's chronic daily headaches when assessing the plaintiff's RFC. *See id.* at 167-68. Along with other directives in its order remanding the case, the Appeals Council instructed the ALJ to evaluate PA Holste's opinion and further consider the plaintiff's RFC. *See id.* at 168.

On remand, the ALJ conducted another hearing and issued the instant decision in March 2020 finding the plaintiff not disabled. *See id.* at 12-30. In contrast to his previous decision, the ALJ found, "[a]fter considering the newly submitted evidence," that the plaintiff's headaches "cause[d] more than minimal limitations in his ability to perform basic work activities[,]" and that they, therefore, constituted a severe impairment. Finding 2, *id.* at 14; *id.* at 19. Nevertheless, the ALJ concluded that the evidence of record did "not support the severity or frequency" of the headaches alleged by the plaintiff, and that his headaches would not prevent him from concentrating or engaging in basic activities. *Id.* at 19-20. The ALJ cited several later-submitted

4

records, including clinical findings that, according to him, reflected the plaintiff's "ability to perform simple tasks in a non-production pace work activity" even with daily headaches. *Id.*

The ALJ gave "little weight" to PA Holste's opinion, explaining,

> Ms. Holste opined the [plaintiff] has chronic daily headaches of moderate severity that affect his ability to perform work-related activities. . . . [T]his opinion is not well supported by the evidence of record. Furthermore, in addition to not being an acceptable medical source Ms. Holste did not cite any objective or other clinical evidence to support her opinion. Moreover, her opinion was somewhat vague. She stated, "I am not sure [the plaintiff] would be able to work with those chronic daily headaches." This statement not only goes to the ultimate issue, which is reserved to the commissioner, it also suggests a level of uncertainty in her own opinion. Nevertheless, taking all of the [plaintiff]'s impairments, and related symptoms, including headaches, the [RFC] assessment accounts for limitations to the extent they are supported by the record. Notably, to the extent his symptoms would affect his concentration, attention, including distraction from job duties or surroundings, the [plaintiff] is limited to performing simple routine tasks that are not done at a production rate pace, [and] he is limited to making only simple work related decisions.

*Id.* at 20-21 (citation omitted). On the other hand, the ALJ afforded "great weight" to the opinions of Drs. Hall and Gonzalez-Mendez. *Id.* at 24.

### B. Analysis

The plaintiff challenges the ALJ's physical RFC findings, arguing, in relevant part, that after acknowledging the materiality of newly submitted evidence, the ALJ improperly relied on his own interpretation of the raw medical evidence to assess "the impact of the Plaintiff's headaches on his ability to function in the workplace." Statement of Errors at 5 (citing *Staples v. Berryhill* ("*Lisa Staples*"), No. 1:16-cv-00091-GZS, 2017 WL 1011426 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017)). He contends that "the ALJ reviewed and interpreted numerous medical records" without "the benefit of a medical opinion[.]" *Id.* at 15.[3]

---

[3] Because I conclude that this point of error warrants remand, I need not reach the plaintiff's other points of error.

5

The commissioner rejoins that the ALJ did not rely on his own interpretation of the medical evidence in determining the plaintiff's headache-related limitations but, rather, appropriately relied on the opinions of Drs. Hall and Gonzalez-Mendez and partially credited the plaintiff's subjective allegations and PA Holste's opinion. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 27) at 4-9. She argues that the ALJ ultimately "assessed an RFC that was more favorable than the evidence would otherwise support." *Id.* at 7 (footnote omitted).

The plaintiff has the better argument.

Despite the commissioner's arguments to the contrary, the ALJ could not have properly relied upon the opinions of Drs. Hall and Gonzalez-Mendez in assessing the limitations flowing from the plaintiff's headaches. Because Drs. Hall and Gonzalez-Mendez did not find that the plaintiff suffered from a medically determinable headache impairment, they necessarily did not assess limitations flowing from that condition. *See* Record at 111, 130-31; *John W. D. v. Saul*, No. 2:19-cv-00478-GZS, 2020 WL 6709556, at *4 (D. Me. Nov. 15, 2020) (rec. dec., *aff'd* Dec. 1, 2020). Indeed, the ALJ effectively conceded that the opinions of Drs. Hall and Gonzalez-Mendez could not stand as substantial evidence of the limitations stemming from the plaintiff's headaches when he departed from those opinions and found that the plaintiff suffered from a severe headache impairment based on "newly submitted evidence[.]" Record at 19; *see Lisa Staples*, 2017 WL 1011426, at *5.

The problem is that the ALJ was not competent to assess the plaintiff's headache-related limitations directly from the new evidence. *See Gordils v. Sec'y of Health & Hum. Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an ALJ is not "precluded from rendering common-sense judgments about functional capacity based on medical findings," he or she "is not qualified to

6

assess residual functional capacity based on a bare medical record.").[4] The commissioner attempts to avoid this issue by suggesting that the ALJ did not interpret raw medical evidence but rather relied in part on the plaintiff's subjective complaints and PA Holste's opinion. *See* Opposition at 7. I am not persuaded.

The ALJ made it clear that the newly submitted evidence informed his assessment of the plaintiff's headaches. *See* Record at 19 ("After considering the newly submitted evidence, the [plaintiff]'s headaches cause more than minimal limitations in his ability to perform basic work activities."). And, in the absence of any medical opinion interpreting that evidence, the ALJ must have necessarily interpreted it himself. *See id.* at 20 (concluding that later-submitted "clinical findings" supported the plaintiff's "ability to perform simple tasks in a non-production pace work activity"); *Linda C. T. v. Saul*, No. 2:20-cv-00060-NT, 2021 WL 371691, at *3-4 (D. Me. Feb. 3, 2021) (rec. dec., *aff'd* Feb. 24, 2021) (rejecting the commissioner's argument that an ALJ merely credited a claimant's subjective allegations when the ALJ had "cited material later-submitted evidence" unseen by any medical expert as informing her decision and, therefore, "necessarily must have interpreted the evidence . . . herself to fill in the gap").

That the ALJ may have also partially credited the plaintiff's subjective complaints and/or given some slight credence to PA Holste's opinion does not render his error in interpreting the later-submitted evidence harmless. It is true, as the commissioner points out, *see* Opposition at 7-8, that this court has affirmed decisions in which the ALJ departed from expert opinions based on a plaintiff's subjective complaints, but it has done so only when it was reasonably clear that the ALJ did not interpret raw medical evidence. *Cf. Kristina D. B. v. Berryhill*, No. 1:18-cv-00088-JHR, 2019 WL 1407407, at *3-4 (D. Me. Mar. 28, 2019) (affirming when an ALJ rejected expert

---

[4] The commissioner does not argue that the ALJ made a common-sense judgment in this case. *See* Opposition at 4-9.

7

opinions not because of later submitted evidence but because she chose to credit some of the claimant's subjective allegations); *Davis B. v. Berryhill*, No. 1:18-cv-00009-LEW, 2019 WL 495580, at *4 (D. Me. Feb. 8, 2019) (rec. dec., *aff'd* Mar. 19, 2019) (affirming when an "ALJ did not interpret raw medical evidence but, rather, relied in part on [a consultative examiner's] opinion and in part on the [claimant]'s own subjective statements").

Because the ALJ's findings regarding the functional impact of the plaintiff's headaches were not supported by any medical opinion and were not merely the result of a permissible partial crediting of the plaintiff's subjective complaints, they are not more favorable than the evidence would otherwise support. *See Lisa Staples*, 2017 WL 1011426, at *5.  To the extent that the commissioner relies on *Wright v. Colvin*, No. 2:14-cv-75-JHR, 2015 WL 58458 (D. Me. Jan. 5, 2015), and *Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401 (D. Me. Jan. 5, 2015), to argue otherwise, *see* Opposition at 7-8 n.5, those cases are readily distinguishable. *See Lisa Staples*, 2017 WL 1011426, at *4 (distinguishing *Wright* and *Soto* on the basis that the ALJs in those cases "did not indicate that agency nonexamining consultants' RFC opinions had been called into question by later-submitted evidence").[5]

At bottom, the headache-related limitations assessed by the ALJ were not supported by substantial evidence, which undermined the relevance of the vocational expert testimony on which the ALJ relied in finding the plaintiff capable of performing work existing in significant numbers in the national economy. *See* Record at 27-29, 65-69; *Arocho v. Sec'y of Health & Hum. Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (holding that responses of a vocational expert are relevant only

---

[5] The commissioner also points to two cases in which this court affirmed limitations to simple, routine, repetitive work when the claimant had been found to be moderately limited in the area of concentration, persistence, or pace. *See* Opposition at 9 (citing *Boyce v. Colvin*, No. 1:13-cv-00381-JAW, 2014 WL 5473237 (D. Me. Oct. 27, 2014), and *Sarah B. v. Saul*, No. 2:19-cv-00267-LEW, 2020 WL 2549250 (D. Me. Apr. 23, 2020) (rec. dec., *aff'd* May 18, 2020)). Those two cases, however, involved the adequacy of mental limitations assessed by medical experts and adopted by the ALJ, distinguishing them from this case. *See Boyce*, 2014 WL 5473237, at *2-4; *Sarah B.*, 2020 WL 2549250, at *3-4.

to the extent they are offered in response to hypothetical questions that correspond to "conclusions that are supported by the outputs from the medical authorities"). Reversal and remand are therefore warranted.

## II.   Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of January, 2022.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge